IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARZELLE LAMONTE SWAFFORD, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) NO. 3:18-cv-00424 ) ) JUDGE CAMPBELL |
| MIKE PARRIS, Warden, | ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION

Charzelle Swafford is currently serving a sentence of life in prison based on his October 2013 conviction by a Davidson County, Tennessee jury of one count of first-degree murder, four counts of attempted first-degree murder, and the use of a firearm during an attempt to commit a dangerous felony. On April 20, 2018, he filed his pro se Petition for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Respondent thereafter filed an Answer to the Petition (Doc. No. 11) and the state court record (Doc. Nos. 10, 18), and Petitioner filed a Reply to Respondent's Answer (Doc. No. 19).

This matter is ripe for the Court's review, and the Court has jurisdiction. Respondent does not dispute that the Petition is timely, that this is Petitioner's first Section 2254 petition related to this conviction, and that the claims of the Petition have been exhausted. (Doc. No. 11 at 2.)

Having reviewed Petitioner's arguments and the underlying record, the Court finds that an evidentiary hearing is not required. As explained below, Petitioner is not entitled to relief under Section 2254, and his Petition will therefore be denied.

# I. PROCEDURAL HISTORY

Petitioner's conviction on charges of murder, attempted murder, and use of a firearm during the attempt to commit a felony resulted in a sentence to life in prison plus a consecutive 56-year prison term. *See State v. Swafford*, No. M2014-00421-CCA-R3-CD, 2015 WL 1543251, at *1 (Tenn. Crim. App. Apr. 2, 2015), *perm. app. denied* (Tenn. Aug. 12, 2015). The Tennessee Court of Criminal Appeals (TCCA) affirmed Petitioner's conviction on direct appeal, and the Tennessee Supreme Court denied discretionary review. *Id.*

Petitioner argued on direct appeal that the trial court erred in denying his motion for a mistrial, in admitting a witness's recorded statement into evidence, and in sentencing him as it did, while also challenging the sufficiency of the evidence to support his murder and attempted murder convictions. (Doc. No. 10-12 at 9.) Following the rejection of these arguments and the denial of Tennessee Supreme Court review, Petitioner returned to the trial court, where he filed a pro se petition for post-conviction relief on December 23, 2015. (Doc. No. 10-17 at 42–50.) The court appointed counsel for Petitioner, and an amended post-conviction petition was filed on July 15, 2016. (*Id.* at 59–62.) The case proceeded to an evidentiary hearing, after which the post-conviction court issued a decision denying relief. (*Id.* at 68–103.)

Petitioner filed an appeal from this denial, raising the issue of whether his trial counsel was constitutionally ineffective for (1) failing to notify the court that a juror was asleep during the trial, and (2) failing to include as grounds for his motion for new trial the erroneous admission of cell phone location data that "was crucial in placing [Petitioner] at or near the scene of the crime." (Doc. No. 10-26 at 8.) The TCCA affirmed the denial of post-conviction relief, and the Tennessee Supreme Court denied discretionary review. *Swafford v. State*, No. M2017-00082-CCA-R3-PC, 2017 WL 3475437 (Tenn. Crim. App. Aug. 14, 2017), *perm. app. denied* (Tenn. Nov. 16, 2017). Petitioner then filed his pro se petition under Section 2254 in this Court.

2

## II. STATEMENT OF FACTS

### A. Evidence at Trial

Petitioner was convicted of crimes that occurred on October 1, 2011, when he shot and killed twenty-year-old Dajuantae Moore, wounded one teenaged victim, and threatened three other teenagers at the apartment of Sharika Mallory. The day before these shootings, Ms. Mallory had several guests at her apartment, four of whom (including Petitioner) were members of the Rollin' 40 Crips gang. Ms. Mallory testified that sometime that evening, Petitioner engaged in a heated argument with Moore over Moore's use of a term considered disrespectful to the Rollin' 40 Crips. Petitioner was then asked by Ms. Mallory to leave, while Moore and several other guests stayed the night in Ms. Mallory's apartment. *State v. Swafford*, 2015 WL 1543251, at *1–2.

When Petitioner returned to the apartment the following day, Ms. Mallory had left to pick up lunch, but Moore and four others remained. One of the remaining individuals, Diajanne Coward, testified that Moore let Petitioner into the apartment when he arrived at around 11:30 a.m., and that Petitioner proceeded to draw a gun and shoot Moore multiple times. He then began to shoot toward individuals standing in the kitchen before returning to shoot Moore again. Petitioner then chased Ms. Coward and another victim upstairs. "Ms. Coward saw the [Petitioner] point the gun at them and heard it make three clicking noises," but she was able to flee to a bedroom and secure the door behind her. When she heard Petitioner leave the apartment and close the door, Ms. Coward went downstairs and found Moore lying face down and unresponsive. *Id.*

Ms. Coward then placed a 911 call, which was admitted into evidence as an audio recording and transcript. "During the call, which was received at 12:32 p.m., Ms. Coward was distressed and told the 911 operator that there had been a shooting and that one victim was dead. She identified the shooter as 'Charzelle'", later testifying that she did not know his nickname, "C-Hell," until the

3

other survivors of the shooting told her. *Id.* at *3. The evidence showed that officers responding to the 911 call found Moore lying dead and face down in the apartment, while the other shooting victim was found injured across the street along with a hysterical, teenage girl who provided police with Petitioner's nickname. *Id.* at *5. Ms. Coward subsequently identified Petitioner in a photographic lineup as the shooter. *Id.* at *2. Her testimony was largely corroborated by other victims and eyewitnesses.

In addition to witness testimony establishing Petitioner's presence at the scene of the crime, the state also relied on cellphone records supplied by his cellular carrier, which confirmed signals sent to Petitioner's phone through a cell site antenna located one-third of a mile from the crime scene. These records, while not as accurate as GPS data, indicated the location of Petitioner's cellphone in proximity to the crime scene at various times between 12:00 and 12:38 p.m. on the day of the shooting. *Id.* at *6–7.

The defense called Petitioner's stepmother, Delilah Scales, as an alibi witness. Ms. Scales testified that Petitioner was at her house in Murfreesboro, Tennessee, at the time of the shooting and stayed there until at least 1:00 p.m. *Id.* at *7. The jury rejected this testimony and convicted Petitioner on all counts charged.

## B. Evidence at Post-Conviction Proceeding

The TCCA described Petitioner's post-conviction evidentiary hearing as follows:

> . . . At the hearing on the petition, post-conviction counsel orally amended the petition to include an issue related to trial counsel's failure to appeal the trial court's denial of a motion to suppress cell phone data which was used at trial to help prove Petitioner's location at the time of the crimes. The parties agreed to the amendment of the petition.
>
> At the hearing on the petition for post-conviction relief, Petitioner testified that he spoke with trial counsel "a good amount of time" during his incarceration prior to trial. Trial counsel even enlisted the help of another attorney. They both met with Petitioner at the jail and went over the discovery documents prior to trial. Petitioner

admitted that numerous motions were filed pretrial, including a motion to suppress cell phone records.

Petitioner explained that he suffered from "ADHD and some other stuff." He recalled an "evaluation" prior to trial but did not recall who performed the evaluation or the purpose of the evaluation. Petitioner knew that he had completed a mental health evaluation sometime in the past at "Dede Wallace and Centerstone" where he learned he had "ADHD and something else." Petitioner was unable to put a label on the exact source of his problems but explained that his mental problems affected his ability to understand things "a little bit." Petitioner recalled that trial counsel "got [his] alibi in court," meaning trial counsel utilized an alibi defense during trial. Petitioner explained that the defense strategy was unsuccessful. Petitioner read the opinion issued by this Court on direct appeal but did not "get" some of it because it was difficult for him to understand.

Petitioner insisted that a juror fell asleep during the trial. Petitioner described the juror as a white male that was "sitting either [in] the third seat or the fourth seat in the front." He told trial counsel about the juror but trial counsel did not address the issue with the trial court. Petitioner testified that he relied on all of the allegations made in his petition for relief, not just the ones he remembered to talk about at the hearing.

Trial counsel testified that he had been licensed to practice law in Tennessee since 2008 and, at the time of the hearing, had worked in the public defender's office for seven years. Trial counsel was appointed to represent Petitioner after someone in the public defender's office retired but recalled being involved "essentially from the very beginning, maybe initially as the second chair." Trial counsel "really liked" Petitioner, describing him as a "loving, funny guy." Trial counsel met with Petitioner "a lot" because he was trial counsel's "most serious case at the time." They discussed discovery, possible defenses, and Petitioner's needs during their meetings which were sometimes brief.

Trial counsel made the decision to have an evaluation performed on Petitioner "out of caution" but ultimately decided that it was not "going to be a fruitful avenue to follow especially given the report." Trial counsel could not exactly recall Petitioner's diagnosis but thought that "PTSD and ADHD" [(posttraumatic stress disorder and attention-deficit/hyperactivity disorder, respectively)] were the primary issues Petitioner faced. Trial counsel informed the post-conviction court that Petitioner had a "very rough life."

Petitioner "was pushing" trial counsel to use an alibi defense. Trial counsel agreed with Petitioner at the time but admitted in "hindsight" that he "may not have done that" in light of testimony introduced at trial by the State, including a 911 call that named Petitioner as a suspect. Additionally, Petitioner's mother, the main alibi witness, was not a "natural speaker." In fact, trial counsel remembered rebuttal testimony entered by the State that tended to prove Petitioner's mother admitted to

5

an officer that Petitioner was not actually with her at the time of the incident. Trial counsel also admitted that he should have "pushed harder" to emphasize the power that the gang leader had over Petitioner as he felt that it was a "more fruitful" defense than the alibi defense.

Trial counsel filed several pretrial motions including a motion to suppress cell phone records. The motion sought to prohibit the State from using "actual pings on cell phone towers around the city that they could use to somewhat triangulate somebody's position." The motion was denied in a lengthy order from the trial court, who determined that a search warrant was not required to obtain historical cell site data from a third party provider and the State complied with the requirements of the applicable statute by obtaining a court order for the telecommunications records. Trial counsel admitted that he made an "actual mistake" by failing to "include [this issue] in the motion for new trial."

When asked about a sleeping juror, trial counsel testified he "think[s] maybe there was one guy that [he] felt like was listening, but he would listen with . . . his head down." Trial counsel "kept watching him and felt like he was actually awake." Trial counsel admitted that he did not "remember much on that" issue or a "specific person." Trial counsel explained that if a juror fell asleep, the remedy would most likely be for that juror to become an alternate.

*Swafford v. State*, 2017 WL 3475437, at *1–2.

### III. CLAIMS PRESENTED FOR REVIEW

Liberally construed, Petitioner's pro se petition in this Court raises the following claims:

(1) Trial counsel rendered ineffective assistance in violation of the Sixth Amendment when he (a) failed to bring to the trial court's attention or otherwise adequately address the issue of the sleeping juror; (b) failed to include in his motion for new trial a challenge to the trial court's admission of evidence showing Petitioner's cell-site location; (c) failed to mount a defense related to Petitioner's diminished mental capacity; and (d) failed to use expert sources to support his motion to suppress the cellular location data.

(2) The trial court violated Petitioner's due process rights when it failed to address the issue of the sleeping juror.

(3) Petitioner was denied due process when the state failed to provide him a full and fair hearing of his claims on post-conviction appeal.

(Doc. No. 1 at 5–8.)

## IV. LEGAL STANDARD

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state

7

court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support

in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting Section 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 & n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

The standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Petitioner bears the burden of proof. *Pinholster*, 563 U.S. at 181.

Even that demanding review, however, is ordinarily only available to state inmates who have fully exhausted their remedies in the state court system. 28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182; *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (petitioner must present the "same claim under the same theory" to the state court). This rule has been interpreted by the Supreme Court as one of total exhaustion, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that each and every claim set forth in the federal habeas corpus petition must have been presented

9

to the state appellate court.[1] *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977*); see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim or state law deems the claim waived),[2] then the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 731–32.

---

[1] In Tennessee, the Court of Criminal Appeals is the highest appellate court to which appeal must be taken in order to properly exhaust a claim. *See* Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F.3d 398, 402–03 (6th Cir. 2003).

[2] Under the Tennessee Post-Conviction Procedure Act, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," unless that ground could not be presented due to unconstitutional state action, or is based on a new and retroactive constitutional right that was not recognized at the time of trial. Tenn. Code Ann. § 40-30-106(g).

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (emphasis in original). Examples of cause include the unavailability of the factual or legal basis for a claim or interference by officials that makes compliance "impracticable." *Id.* To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392

11

(2004) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## V. ANALYSIS

### A. Procedurally Defaulted Claims

Respondent asserts, and Petitioner concedes in his Reply (Doc. No. 19), that two of the four ineffective assistance claims (Claims 1(c) and (d), above) and the due process claim related to the trial court's failure to address the sleeping-juror issue (Claim 2) were procedurally defaulted when Petitioner failed to raise them before the TCCA. Because there is no longer any available state court remedy for these claimed violations, the claims are technically exhausted, but procedurally barred from habeas review unless Petitioner "can demonstrate cause for the default and actual prejudice" from the claimed violations, or that a fundamental miscarriage of justice will result if this Court does not consider them. *Coleman*, 501 U.S. at 731–32, 750.

With regard to the ineffective assistance claims—which rely on trial counsel's failure to mount a defense related to Petitioner's diminished mental capacity (Claim 1(c)) and failure to use expert sources to support his motion to suppress the cellular location data (Claim 1(d))—Petitioner asserts the ineffective assistance of his post-conviction counsel as cause for the procedural default. (Doc. No. 19 at 1–2, 13.) Specifically, he asserts that he was abandoned by his post-conviction appellate attorney, who failed "to present all of his claims as he requested his counsel to do on appeal." (*Id.* at 2.)

However, the Supreme Court has "explained clearly that 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). Attorney error is not attributable to a habeas petitioner—and thus may

12

serve as cause for a procedural default—if the error was made at a stage when the Sixth Amendment right to counsel attached, or at the stage presenting the first meaningful opportunity to raise an ineffective assistance of trial counsel claim, *see Martinez*, 566 U.S. at 10–11, because then "the Sixth Amendment itself requires that responsibility for the default be imputed to the State" rather than to the petitioner. *Coleman*, 501 U.S. at 754. But in all other cases, attorney error cannot be cause excusing a procedural default, "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Id.*

The Court is sympathetic to Petitioner's frustration that his post-conviction appellate counsel failed to raise claims that Petitioner directed him to raise. However, he misses the mark in citing to the Sixth Circuit's determination in *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998), that "the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment." (Doc. No. 19 at 14.) Petitioner cites the failure of his attorney on *post-conviction* appeal to raise the issues he preferred, not the failure of counsel to perfect a direct appeal. Unlike the direct appeal stage where the right to counsel attaches, Petitioner had no constitutional right to counsel during collateral, post-conviction proceedings. *Murray v. Giarratano*, 492 U.S. 1, 7–8 (1989). And because his post-conviction appeal was not his first meaningful opportunity to raise the claims at issue, *see Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014) (holding that under Tennessee procedural law, the *initial* post-conviction proceeding is the first meaningful opportunity to raise ineffective-assistance-of-trial-counsel claim), the "attorney error that led to the default of [these] claims in state court cannot constitute cause to excuse the default in federal habeas." *Coleman*, 501 U.S. at 757.

13

In sum, Petitioner has failed to carry his burden of showing cause to excuse the procedural default of his claims of ineffective assistance of trial counsel. He has not attempted to show cause for his defaulted claim of trial court error (Claim 2), other than by reference to his post-conviction counsel's alleged ineffectiveness. However, even if it were counsel's ineffectiveness at the initial stage of post-conviction review that Petitioner relied on, such ineffectiveness can only excuse the default of a claim of ineffective trial counsel, not a claim of trial court error. *Davila v. Davis*, 137 S. Ct. 2058, 2062–63 (2017) (rule of *Martinez* "treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal").

Finally, Petitioner does not assert that the underlying errors by the trial court or counsel produced a fundamental miscarriage of justice resulting in his conviction despite his actual innocence of the crimes charged. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[I]in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."); *Dretke*, 541 U.S. at 392. The Court is therefore barred from considering the merits of Petitioner's defaulted claims.

### B. Properly Exhausted Ineffective Assistance Claims

Claims 1(a) and (b), asserting trial counsel's ineffectiveness related to the sleeping juror and the failure to include the suppression issue in his motion for new trial, were properly exhausted before the state courts and are thus appropriately considered here.

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether

14

counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice under *Strickland* requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

As discussed above, however, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. §§ 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than

15

if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

The TCCA correctly identified and summarized the *Strickland* standard applicable to these claims. *Swafford v. State*, 2017 WL 3475437 at *4. Accordingly, the critical question is whether the state court applied *Strickland* reasonably in reaching the following conclusions:

> Petitioner alleged in the petition and on appeal that a juror fell asleep during trial and trial counsel failed to notify the trial court of this fact. Petitioner was unable to definitively identify the juror but thought that he was a younger white male seated in the third or fourth seat on the front row. Trial counsel did not recall a juror sleeping during Petitioner's trial. Trial counsel actually thought he recalled a juror who appeared to be listening with his head down but was awake during trial. Trial counsel admitted that he may have had a conversation with Petitioner about the sleeping juror but testified that if he had noticed a sleeping juror, he would have brought it to the attention of the trial court.
>
> The post-conviction court accredited the testimony of trial counsel and noted that Petitioner's testimony was uncorroborated. In fact, the post-conviction court reviewed records from Petitioner's trial and determined that a female juror was seated in the fourth seat and a male juror was seated in the third seat. The male juror ultimately became an alternate and did not deliberate with the jury. The post-conviction court determined that Petitioner failed to prove deficient performance or prejudice of trial counsel with regard to the juror. The evidence does not preponderate against the determination of the post-conviction court. Petitioner's only proof with regard to the allegedly sleeping juror was his own testimony, which the post-conviction court discredited. The post-conviction court assessed his credibility—a task within its purview—and determined Petitioner's testimony was not credible. We will not review this determination on appeal. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). Petitioner is not entitled to relief on this issue.
>
> Additionally, the record does not preponderate against the post-conviction court's determination that Petitioner failed to prove ineffective assistance of counsel for trial counsel's failure to challenge the trial court's ruling on the motion to suppress cell phone data in a motion for new trial. Trial counsel admitted at the hearing that his failure to include the issue in the motion for new trial was a "mistake." The

16

post-conviction court determined that Petitioner failed to show he was prejudiced by the omission of the issue. We agree. Petitioner merely argues that the evidence from cell phone "pings" was "crucial in placing [him] at or near the scene of the crime" but fails to show how or why he would have prevailed on appeal had this issue been included in the motion for new trial. Petitioner failed to prove prejudice on this claim. The post-conviction court extensively analyzed this issue, discussing the original order denying the motion to suppress the cell phone data and concluding that there was still no authority that would result in the exclusion of the evidence. In other words, the post-conviction court concluded that even if trial counsel had included the issue in a motion for new trial, Petitioner would not have been successful on appeal. Petitioner has presented no authority in this Court that would show otherwise. Petitioner is not entitled to relief on this issue.

*Id.* at *4–5.

The TCCA reasonably analyzed these issues and determined that counsel was not ineffective under *Strickland*. First, with respect to the allegedly sleeping juror, the TCCA deferred to the credibility determination of the trial court, which credited counsel's testimony at the post-conviction evidentiary hearing over that of Petitioner. Petitioner argues that counsel's testimony was "completely conjecture," and that counsel's uncertain recollection of whether the juror was actually asleep, or was awake and listening with his head down, rendered his failure to call this issue to the trial court's attention deficient performance under *Strickland*. (Doc. No. 19 at 17–18.) But assessing the credibility of witnesses is the province of the trial court, which also relied upon its own records reflecting that the juror suspected of sleeping did not participate in deliberations. In determining that the evidence opposing the trial court's finding—consisting only of Petitioner's hearing testimony—did not preponderate against the trial court's denial of the sleeping juror claim, the TCCA did not unreasonably apply *Strickland*. Nor did it unreasonably determine the facts surrounding this issue. While Petitioner believes that the state courts unreasonably failed to develop the record by "hear[ing] from other jurors who possibly could have witnessed whether the white male juror or any juror was asleep during the trial" (Doc. No. 19 at 9), the post-conviction trial court's failure to go beyond the record made by Petitioner and his counsel to investigate

17

Petitioner's belief that a juror was asleep was not inappropriate, nor can the trial or appellate courts' determination upon an inconclusive record be deemed unreasonable, particularly as it is Petitioner who "ha[s] the burden of proving the allegations of fact by clear and convincing evidence" during post-conviction proceedings. Tenn. Code Ann. § 40-30-110(f).

With regard to counsel's failure to raise, in his motion for new trial, the claim that the trial court erred in denying his motion to suppress cell site location information, it is clear that the TCCA reasonably applied *Strickland* in determining that Petitioner was not prejudiced by this omission. In particular, the TCCA reasonably noted that (1) *Strickland* requires a showing that, but for counsel's deficient performance, the result of the proceeding would have been different, and (2) the available authority did not support the suppression of the location data, nor was there any other reason to believe that this claim of error, if included in the motion for new trial, would have resulted in Petitioner winning relief. *Swafford v. State*, 2017 WL 3475437 at *4, 5. As Respondent aptly notes, abundant eyewitness testimony placed Petitioner at the crime scene. Finally, Petitioner does not allege, nor does it otherwise appear, that the TCCA's analysis of this issue was based on any unreasonable factual determination.

For these reasons, the Court finds no merit in Petitioner's properly exhausted claims of ineffective assistance of counsel.

### C. Full and Fair Post-Conviction Hearing

Petitioner claims that he was denied due process when the state failed to provide him a full and fair hearing on post-conviction appeal. But, as Respondent points out, the state's provision of a post-conviction review process is not mandated by the Federal Constitution, *Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394, 402–03 (2001); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and any error committed in conducting such review does not bear on the validity of the

underlying conviction, *Kirby v. Dutton*, 794 F.2d 245, 246–48 (6th Cir. 1986). Therefore, the deprivation of any or all such post-conviction process does not create a viable claim in federal habeas. As the Sixth Circuit explained in *Cress v. Palmer*, 484 F.3d 844 (6th Cir. 2007):

> We have clearly held that claims challenging state collateral post-conviction proceedings cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254, because the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody. A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention. Though the ultimate goal in a case alleging post-conviction error is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement. Accordingly, we have held repeatedly that the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings, noting that the writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration.

*Id.* at 853 (citations and quotation marks omitted). Accordingly, this claim is without merit.

## VI. CONCLUSION

For the foregoing reasons, the habeas corpus petition will be denied and this matter will be dismissed with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a Section 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336

(2003) (citations and internal quotation marks omitted). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id.* at 337.

Because reasonable jurists could not debate whether Petitioner's claims should have been resolved differently or are deserving of encouragement to proceed further, the Court will deny a COA. Petitioner may seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate Order is filed herewith.

                                                                                                                                    _____
                                                                                                                                   WILLIAM L. CAMPBELL, JR.
                                                                                                                                   UNITED STATES DISTRICT JUDGE